FILED
01/17/2018
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 1, 2017

IN RE ADDISON E. ET AL.

Appeal from the Juvenile Court for Overton County
No. 16-JV-41     Daryl Colson, Judge

No. M2017-00481-COA-R3-PT

This is a termination of parental rights action involving two minor children. In June 2015, temporary custody of the children was granted to the Tennessee Department of Children's Services ("DCS"), and the children were placed in foster care. DCS subsequently filed a petition to terminate the parental rights of the father on May 12, 2016, following the mother's surrender of her parental rights. The trial court conducted a bench trial on January 18, 2017. On February 1, 2017, the court entered an order granting the petition upon finding that DCS had proven by clear and convincing evidence the ground of abandonment by the father's engagement in conduct exhibiting a wanton disregard for the welfare of the children prior to his incarceration. The court also found clear and convincing evidence that termination of the father's parental rights was in the children's best interest. The father has appealed. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court
Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which ANDY D. BENNETT, J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Bruce E. Myers, Livingston, Tennessee, for the appellant, Kerry E.

Herbert H. Slatery, III, Attorney General and Reporter; Ellison M. Berryhill, Assistant Attorney General; and Kathryn A. Baker, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

**OPINION**

I. Factual and Procedural Background

This termination of parental rights action involves two children, Addison E. and Ava E. ("the Children"), who were born in 2009 and 2013, respectively, during the marriage of Kerry E. ("Father") and Christina E. ("Mother"). Upon a finding of dependency and neglect, the Overton County Juvenile Court ("trial court") placed the Children in DCS custody on June 15, 2015. Mother surrendered her parental rights to the Children on February 17, 2016. Therefore, the appeal before us involves solely the termination of Father's parental rights to the Children.[1]

DCS filed a termination petition in the trial court on May 12, 2016, seeking to terminate Father's parental rights to the Children. In the petition, DCS averred that Father was incarcerated at that time. DCS alleged as statutory grounds for termination that (1) Father had abandoned the Children by failing to provide a suitable home for them and (2) Father had abandoned the Children by engaging in conduct exhibiting a wanton disregard for the welfare of the Children prior to Father's incarceration. DCS further alleged that termination of Father's parental rights was in the best interest of the Children.

Father, proceeding self-represented, filed a response in opposition to the termination petition on September 14, 2016. In his response, Father asserted that he was released on parole in 2015 and attempted to arrange to communicate or visit with the Children. Father maintained that he was prohibited from doing so while he was on parole due to "overbroad" stipulations of his parole supervision. Father sought a continuance of the termination hearing date until after his scheduled release from incarceration in November 2016 so that he could attend the hearing.

The trial court conducted a termination hearing on January 18, 2017. Although Father remained incarcerated at the time of the hearing, he participated via teleconference. Upon commencement of the hearing, counsel for DCS acknowledged that DCS was proceeding solely on the statutory ground of abandonment through wanton disregard. The trial court considered testimony from several witnesses, including Father. The court thereafter entered an order terminating Father's parental rights to the Children on February 1, 2017. In its order, the court found that DCS had proven by clear and convincing evidence the ground of abandonment through conduct exhibiting wanton

---

[1] The termination petition also sought termination of the parental rights of Cody W., whom Mother had identified as the putative father of Ava E. Cody W.'s parental rights were terminated by the trial court on October 6, 2016, and are not at issue in this appeal.

disregard for the Children's welfare. With regard to the evidence presented, the court determined that the witnesses for DCS were credible but that Father was not. The court noted that Father had been incarcerated in Indiana since September 2012, having been convicted of sexual misconduct with a minor and sentenced to six years' imprisonment.

Concerning the statutory ground alleged, the trial court found that Father's conduct in 2012 and 2013 leading to his conviction and incarceration, as well as his failure to comply with the conditions of his recent parole, exhibited a wanton disregard for the welfare of the Children. The court also noted that upon his release from jail on parole, Father chose to use illegal drugs and was thereafter reincarcerated. Consequently, the court determined that the ground of abandonment by conduct exhibiting wanton disregard for the Children's welfare had been proven by clear and convincing evidence.

The trial court further found clear and convincing evidence that termination of Father's parental rights was in the best interest of the Children. The court specifically stated that Father had not made an adjustment of circumstances, conduct, or conditions as to make it safe and in the Children's best interest to be in his home. The court determined that Father had failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such a duration of time that lasting adjustment did not reasonably appear possible. The court also determined that Father had not maintained regular contact or visitation with and had no meaningful relationship with the Children. Based on the evidence presented, the court found that a change of caretakers would likely have a negative effect on the Children, who needed permanency and removal of the "stigma" of being foster children. The court observed that the Children were doing well in school and that they considered the foster parents to be their parents. Moreover, the court noted that Father had not paid child support consistent with the respective guidelines and had shown little or no interest in the Children. The court therefore terminated Father's parental rights. Proceeding through counsel, Father filed a timely notice of appeal, which bore only the signature of his attorney.

## II. Issues Presented

Father presents three issues for our review,[2] which we have restated as follows:

---

[2] Father also raised an issue in the statement of issues contained in his appellate brief regarding whether the trial court "improperly determined that [Father] abandoned his child by failing to support her." We note, however, that DCS never alleged this as a ground for termination, and the trial court did not find this ground as a basis for terminating Father's parental rights. Moreover, DCS has acknowledged in its appellate brief that the only ground proven against Father was the ground of abandonment by conduct demonstrating wanton disregard for the Children's welfare. We therefore determine that the ground of abandonment by failure to support is inapplicable and need not be addressed in this Opinion.

1. Whether Tennessee Code Annotated § 36-1-124(d) requires the signature of the appellant.

2. Whether the trial court erred by finding that DCS had proven, by clear and convincing evidence, the statutory ground of abandonment by demonstrating that Father had engaged in conduct exhibiting a wanton disregard for the welfare of the Children prior to Father's incarceration.

3. Whether the trial court erred by determining that termination of Father's parental rights was in the Children's best interest.

## III. Standard of Review

In a termination of parental rights case, this Court has a duty to determine "whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006). The trial court's findings of fact are reviewed *de novo* upon the record, accompanied by a presumption of correctness unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d); *see In re Carrington H.*, 483 S.W.3d 507, 524 (Tenn. 2016); *In re F.R.R., III*, 193 S.W.3d at 530. Questions of law, however, are reviewed *de novo* with no presumption of correctness. *See In re Carrington H.*, 483 S.W.3d at 524 (citing *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009)). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

"Parents have a fundamental constitutional interest in the care and custody of their children under both the United States and Tennessee constitutions." *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002). It is well established, however, that "this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). As our Supreme Court has recently explained:

The parental rights at stake are "far more precious than any property right." *Santosky*, 455 U.S. at 758-59. Termination of parental rights has the legal effect of reducing the parent to the role of a complete stranger and of ["]severing forever all legal rights and obligations of the parent or guardian of the child." Tenn. Code Ann. § 36-1-113(l)(1); *see also Santosky*, 455 U.S. at 759 (recognizing that a decison terminating parental

4

rights is "*final* and irrevocable"). In light of the interests and consequences at stake, parents are constitutionally entitled to "fundamentally fair procedures" in termination proceedings. *Santosky*, 455 U.S. at 754; *see also Lassiter v. Dep't of Soc. Servs. of Durham Cnty, N.C.*, 452 U.S. 18, 27 (1981) (discussing the due process right of parents to fundamentally fair procedures).

Among the constitutionally mandated "fundamentally fair procedures" is a heightened standard of proof—clear and convincing evidence. *Santosky*, 455 U.S. at 769. This standard minimizes the risk of unnecessary or erroneous governmental interference with fundamental parental rights. *Id.*; *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.*, 319 S.W.3d at 596 (citations omitted). The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not. *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005); *In re M.A.R.*, 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005).

* * *

In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. *In re Bernard T.*, 319 S.W.3d at 596-97.

*In re Carrington H.*, 483 S.W.3d at 522-24. "[P]ersons seeking to terminate [parental] rights must prove all the elements of their case by clear and convincing evidence," including statutory grounds and the best interest of the child. *See In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010).

IV. Tennessee Code Annotated § 36-1-124(d)

Father's initial issue concerns the recently enacted requirement of Tennessee Code Annotated § 36-1-124(d) (2017) that "[a]ny notice of appeal filed in a termination of parental rights action shall be signed by the appellant." Father's timely notice of appeal was signed only by his attorney and was not personally signed by Father. In response to

an order entered by this Court, the parties included arguments addressing this issue in their respective appellate briefs. Father asserts that Tennessee Code Annotated § 36-1-124(d) should be liberally construed in order to allow his appeal to proceed and avoid a violation of Father's constitutional rights. DCS argues that Father's unsigned notice of appeal is jurisdictionally deficient and requires the dismissal of his appeal.

During the pendency of this appeal, our Supreme Court conclusively resolved this issue in the case of *In re Bentley D.*, ___ S.W.3d ___, ___, No. E2016-02299-SC-RDO-PT, 2017 WL 5623577, at *5 (Tenn. Nov. 22, 2017). In *Bentley*, the High Court determined that Tennessee Code Annotated § 36-1-124(d) did not require that a notice of appeal in a termination case be signed personally by the appellant. *See id.* The Court explained:

> Because section 36-1-124(d) does not require the appellant to sign "personally" the notice of appeal and does not distinguish the appellant from his or her attorney, we conclude that the word "appellant" includes an attorney specifically authorized to file a notice of appeal on the appellant's behalf. We emphasize that no appeal should be taken in a termination of parental rights proceeding without specific authorization from the client. Construing the signature requirement of section 36-1-124(d) to require specific authorization for a notice of appeal signed by an appellant's attorney strikes the appropriate balance between protecting the fundamental rights of parents and acting in the best interests of children. See In re Carrington H., 483 S.W.3d at 533 ("Due process unquestionably requires States to provide parents with fundamentally fair procedures, but it does not require States to ignore the other interests at stake in parental termination proceedings.").

*Id.* (footnote omitted). Therefore, the *Bentley* Court determined that the appeal was not subject to dismissal simply because the appellant's timely notice of appeal was signed by the appellant's attorney rather than by the appellant personally. *Id.*

Based on the Supreme Court's statutory construction of Tennessee Code Annotated § 36-1-124(d) and instruction in *Bentley*, we likewise conclude that Father's appeal in this matter is not subject to dismissal simply because Father's timely notice of appeal was signed by Father's attorney rather than by Father personally. Accordingly, we will proceed to analyze Father's remaining issues on the merits.

V.  Statutory Ground of Abandonment through Wanton Disregard

Tennessee Code Annotated § 36-1-113 (2017) lists the statutory requirements for termination of parental rights, providing in relevant part:

(a)   The chancery and circuit courts shall have concurrent jurisdiction with the juvenile court to terminate parental or guardianship rights to a child in a separate proceeding, or as a part of the adoption proceeding by utilizing any grounds for termination of parental or guardianship rights permitted in this part or in title 37, chapter 1, part 1 and title 37, chapter 2, part 4.

* * *

(c)   Termination of parental or guardianship rights must be based upon:

(1)   A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

(2)   That termination of the parent's or guardian's rights is in the best interests of the child.

The trial court specifically found that Father had abandoned the Children by exhibiting wanton disregard for the Children's welfare prior to Father's incarceration. *See* Tenn. Code Ann. § 36-1-102(1)(A)(iv) (2017).  Tennessee Code Annotated § 36-1-113(g)(4), as relevant to this issue, provides:

(g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g).  The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:

(1)   Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred[.]

Tennessee Code Annotated § 36-1-102(1)(A)(iv) provides in pertinent part:

A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the

> parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and . . . <u>the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child</u> . . . .

(Emphasis added.)

A parent's actions constituting wanton disregard for the welfare of a child are not restricted to only the four-month period prior to incarceration. *See In re Audrey S.,* 182 S.W.3d 838, 871 (Tenn. Ct. App. 2005). This Court has consistently held that "probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *In re Audrey S.,* 182 S.W.3d at 867-68; *see also In re K.F.R.T.,* No. E2015-01459-COA-R3-PT, 2016 WL 908926, at *4 (Tenn. Ct. App. Mar. 10, 2016). "Simply stated, a parent's 'poor judgment and bad acts that affect the children constitute a wanton disregard for the welfare of the children.'" *In re T.L.G.,* No. E2014-01752-COA-R3-PT, 2015 WL 3380896, at *3 (Tenn. Ct. App. May 26, 2015) (quoting *State, Dep't of Children's Servs. v. Hood,* 338 S.W.3d 917, 926 (Tenn. Ct. App. 2009)).

In the case at bar, the undisputed evidence demonstrated that Father left the State of Tennessee in 2012 to reside with family members in Indiana. Addison was two years old when Father left, and Ava had not yet been born. When questioned at trial regarding why he had moved to Indiana and left Addison behind, Father acknowledged that before leaving Tennessee, he had been charged with and convicted of burglary. Father explained that the prosecuting attorney in that criminal matter instructed Father that his probation would not be reinstated if Father left the state.

Father thereafter resided with an aunt who lived in Indiana. At the time, Father, who was twenty-three years of age, was accused of sexually assaulting his fifteen-year-old cousin, who also resided in the home. Father was charged with and pled guilty to sexual misconduct with a minor, which was classified as a Class C felony in Indiana. Although Father was initially placed in a work release probation program, he violated the conditions of that program and was sentenced to six years' imprisonment in 2013.

Although Father was granted parole at the beginning of December 2016, Father admitted violating the conditions of his parole by using methamphetamine. As a result, Father was incarcerated again at the end of December 2016. Father remained incarcerated at the time of the termination hearing.

Having carefully considered the record on appeal, we agree with the trial court that clear and convincing evidence demonstrated that Father engaged in conduct prior to his incarceration that exhibited a wanton disregard for the welfare of the Children. Father incurred criminal charges in Tennessee when Addison was two years of age, causing him to exit the state, leaving his wife and daughter behind. Shortly after his arrival in Indiana, Father engaged in sexual misconduct with a minor, a charge to which he pled guilty. Father was originally afforded the opportunity to participate in a work release probation program but later violated the terms of his probation and was incarcerated.

Moreover, testimony established that Father had struggled with substance abuse issues since he was fifteen years of age. Father's behavior in December 2016 demonstrated that he had clearly failed to adequately address those issues. There was also proof that Father never financially supported the Children. As this Court has elucidated, "probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *In re Audrey S.,* 182 S.W.3d at 867-68. We conclude that the evidence regarding Father's behavior prior to his incarceration supports the trial court's finding that the statutory ground of wanton disregard was proven by clear and convincing evidence.

## VI. Best Interest of the Children

When a parent has been found to be unfit by establishment of at least one statutory ground for termination of parental rights, as here, the interests of parent and child diverge, and the focus shifts to what is in the child's best interest. *See In re Audrey S.*, 182 S.W.3d at 877; *see also In re Carrington H.*, 483 S.W.3d at 523 (Tenn. 2016) ("'The best interests analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination.'") (quoting *In re Angela E.*, 303 S.W.3d 240, 254 (Tenn. 2010)). Tennessee Code Annotated § 36-1-113(i) provides a list of factors the trial court is to consider when determining if termination of parental rights is in a child's best interest. This list is not exhaustive, and the statute does not require the court to find the existence of every factor before concluding that termination is in a child's best interest. *See In re Carrington H.*, 483 S.W.3d at 523; *In re Audrey S.*, 182 S.W.3d at 878 ("The relevancy and weight to be given each factor depends on the unique facts of each case."). Furthermore, the best interest of a child must be determined from the child's perspective and not the parent's. *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004).

Tennessee Code Annotated § 36-1-113(i) lists the following factors for consideration:

9

(1)     Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2)     Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3)     Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4)     Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5)     The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6)     Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7)     Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8)     Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9)     Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

As our Supreme Court recently elucidated regarding the best interest analysis:

"The best interests analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination." In re Angela E., 303 S.W.3d at 254.

When conducting the best interests analysis, courts must consider nine statutory factors listed in Tennessee Code Annotated section 36-1-113(i). These statutory factors are illustrative, not exclusive, and any party to the termination proceeding is free to offer proof of any other factor relevant to the best interests analysis. In re Carrington H., 483 S.W.3d at 523 (citing In re Audrey S., 182 S.W.3d 838, 878 (Tenn. Ct. App. 2005)). Facts considered in the best interests analysis must be proven by "a preponderance of the evidence, not by clear and convincing evidence." In re Kaliyah S., 455 S.W.3d at 555 (citing In re Audrey S., 182 S.W.3d at 861). "After making the underlying factual findings, the trial court should then consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interest[s]." Id. When considering these statutory factors, courts must remember that "[t]he child's best interests [are] viewed from the child's, rather than the parent's, perspective." In re Audrey S., 182 S.W.3d at 878. Indeed, "[a] focus on the perspective of the child is the common theme" evident in all of the statutory factors. Id. "[W]hen the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child . . . ." Tenn. Code Ann. § 36-1-101(d) (2017).

Ascertaining a child's best interests involves more than a "rote examination" of the statutory factors. In re Audrey S., 182 S.W.3d at 878. And the best interests analysis consists of more than tallying the number of statutory factors weighing in favor of or against termination. White v. Moody, 171 S.W.3d 187, 193-94 (Tenn. Ct. App. 2004). Rather, the facts and circumstances of each unique case dictate how weighty and relevant each statutory factor is in the context of the case. See In re Audrey S., 182 S.W.3d at 878. Simply put, the best interests analysis is and must remain a factually intensive undertaking, so as to ensure that every parent receives individualized consideration before fundamental parental rights are terminated. In re Carrington H., 483 S.W.3d at 523. "[D]epending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis." In re Audrey S., 182 S.W.3d at 878 (citing White v. Moody, 171

S.W.3d at 194). But this does not mean that a court is relieved of the obligation of considering all the factors and all the proof. Even if the circumstances of a particular case ultimately result in the court ascribing more weight—even outcome determinative weight—to a particular statutory factor, the court must consider all of the statutory factors, as well as any other relevant proof any party offers.

*In re Gabriella D.*, 531 S.W.3d 662, 681-82 (Tenn. 2017).

The trial court determined that DCS had presented clear and convincing evidence in this action, revealing that termination of Father's parental rights was in the best interest of the Children. Upon careful review, we agree. Father acknowledged his ongoing criminal behavior, which led to his incarceration at the time of trial. Father could demonstrate no change of circumstances or conduct that would make it safe for the Children to be with him when and if his incarceration ended. Furthermore, Father could not show that he would have a suitable home or a reliable source of income upon release. Father never demonstrated success in addressing his admitted substance abuse issues, and his recent parole violation revealed that this problem was ongoing.

Moreover, Father had not maintained regular contact with the Children and had no meaningful relationship with them. Addison's counselors testified that Addison felt no attachment to Father and instead looked to her foster father to fulfill the paternal role. The DCS family service workers assigned to the Children each testified that they had received minimal contact from Father since the Children had been in DCS custody. Nikki Wright, assigned to work with the Children from June 2015 to February 2016, testified that she had spoken to Father three to five times during that period after Father sent her a letter early in the proceedings stating that he did not want his rights to be terminated. Ms. Wright explained that during her conversations with Father, he never inquired about the wellbeing of the Children.

Jenna Vaughn, assigned to work with the Children from February 2016 to the time of trial, testified that she had received only one phone call from Father, occurring in December 2016 following Father's release on parole. She explained that she had attempted to locate Father through his attorney. Ms. Vaughn testified that Father had agreed at one point to surrender his parental rights but later changed his mind. Ms. Vaughn also stated that Father never requested communication with the Children.

Father's mother ("Grandmother") testified that Father indicated his desire for custody of Addison "when it was convenient for him to say that he wanted Addison." Grandmother related that Father had never sought custody of Addison via legal action and had failed to demonstrate concern for the Children as a parent should. She further

explained that Father had never sent "a birthday card, a Christmas gift, not anything that had anything to do with a parent caring for a child." According to Grandmother, Father had struggled with anger and substance abuse issues for many years despite attempts made by her and her husband to help Father. Grandmother opined that Father would not "stay focused on any one thing rather than himself." She ultimately opined that Father's parental rights should be terminated because he was unable to care for the Children.

In response, Father testified that he had written letters to Addison and had spoken to her on the telephone on occasion. The trial court, however, found Father's testimony not credible. Father further related that he tried to secure permission to see the Children when he was on parole but could not do so without violating the conditions of his release. Father presented no proof to substantiate this claim.

Ample testimony established that a change of caretakers would have a negative effect on the Children's wellbeing. Addison's counselors testified that Addison entered foster care demonstrating significant behavioral issues, including aggression and anger, which resulted from an attachment disorder. Since residing with her foster family and participating in counseling, however, Addison's behavior had greatly improved. By the time of trial, Addison had bonded with her foster family and considered them to be her parents. One counselor confirmed that Addison consistently stated that she wished to be adopted by her foster parents.

Both counselors testified that although Addison never mentioned Father, when she spoke of "her father," she was referring to her foster father. The counselors agreed that the Children needed permanency and stability in order to continue their forward progress. They were also in accord that both Children were bonded to their foster parents and to one another, such that removing them from that environment would be detrimental.

With reference to the sixth statutory factor, DCS presented evidence that Father had sexually abused a minor to whom he was related while he was living in the same home with that child. Concerning factors seven and eight, Father could offer no proof that the physical environment of his home would be healthy and safe because Father remained incarcerated and continued to engage in criminal activity and the use of controlled substances, rendering him consistently unable to properly care for the Children in a safe and stable manner. Father's mental state would likely be detrimental to his ability to care for the Children due to his unaddressed substance abuse issues. Finally, regarding the last factor, Father presented no evidence that he had ever financially supported the Children.

Based on the evidence presented, we determine that the trial court's finding that termination of Father's parental rights was in the best interest of the Children was proven

by clear and convincing evidence. We therefore affirm the termination of Father's parental rights.

## VII. Conclusion

For the foregoing reasons, we affirm the trial court's judgment in all respects, including the termination of Father's parental rights to the Children. Costs on appeal are assessed to the appellant, Kerry E. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment terminating Father's parental rights to the Children and collection of costs assessed below.


_____
THOMAS R. FRIERSON, II, JUDGE